IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JASON B. HANSHAW,

      Plaintiff,

v.                            CASE NO. 2:06-cv-00906

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are the Plaintiff's Brief in Support of the Complaint and Defendant's Brief in Support of Judgment on the Pleadings.

Plaintiff, Jason Hanshaw (hereinafter referred to as

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

"Claimant"), protectively filed applications for SSI and DIB on June 29, 2004, alleging disability as of November 30, 2003, due to a back impairment and knee pain.  (Tr. at 54-57, 71-72, 251-53.) The claims were denied initially and upon reconsideration.  (Tr. at 29-33, 37-39, 255-59, 261-63.)   On April 4, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 42.)  The hearing was held on December 20, 2005, before the Honorable Theodore Burock.  (Tr. at 283-303.)  By decision dated April 28, 2006, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 13-21.)  The ALJ's decision became the final decision of the Commissioner on September 1, 2006, when the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 6-9.)  On October 25, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f),

416.920(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 15.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of a back impairment, osteoarthritis, athralgias, depression and anxiety.  (Tr. at 15.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 16.)  The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations.  (Tr. at 17.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 19.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as cleaner, kitchen helper, assembler, janitor, maid/housekeeper and assembly, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 20.)

Scope of Review

The sole issue before this court is whether the final decision

4

of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was twenty-seven years old at the time of the administrative hearing.   (Tr. at 287.)   Claimant graduated from high school.   (Tr. at 289.)   In the past, he worked as a cook, as a maintenance worker, as a repairman/deliveryman for an appliance store, and as a helper for a core drilling company.   (Tr. at 100,

5

298-99.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes from Camden-On-Gauley Medical Center. On December 16, 2003, Jessica Murphy, D.O., examined Claimant related to his complaints of back pain. Claimant reported thoracic spine pain and pain in the lumbar area. At the time, Claimant worked as an appliance repairman and lifted and moved washers and dryers. Claimant had some trigger points and tenderness along the right scapular border, and T6 and T7 were rotated to the right. There were no gross abnormalities. The lumbar area was within normal limits. There was some spasm on the right of the L5-S1 vertebrae. Claimant had good lower extremity strength, and he was able to heel and toe walk. Dr. Murphy diagnosed thoracic and lumbar pain and ordered x-rays. She also gave Claimant a shot of Depomedrol and Toradol and prescribed Fioricet and Naprosyn. (Tr. at 139.)

X-rays of Claimant's spine on December 17, 2003, showed evidence of an old injury at L1-2 and some degenerative change. (Tr. at 140.) On December 17, 2003, Claimant stopped in to Dr. Murphy's office and asked that she prescribe Hydrocodone. Dr. Murphy declined and instructed Claimant to try the medication she had prescribed. (Tr. at 138.) On December 30, 2003, Claimant

reported continued thoraco-lumbar pain. X-rays showed an abnormality at L1, so Dr. Murphy ordered an MRI. Claimant had some tenderness in the L1 L2 area with some spasm to the left of that. Standing flexion test was positive to the left. (Tr. at 137.)

Claimant did not return to Dr. Murphy again until July 16, 2004, when Claimant requested lab work for arthritis. Standing flexion test and seated flexion test were positive on the left with L5 rotated to the right with some muscle spasm. Dr. Murphy diagnosed athralgias, ordered lab work and prescribed Toradol and Ibuprofen. (Tr. at 135.) On August 3, 2004, Dr. Murphy noted that Claimant's lab work came back normal. Claimant had paraspinal muscle spasm in the lumbar area. Dr. Murphy diagnosed athralgias, questionable osteoarthritis and questionable fibromyalgia. (Tr. at 133.) On September 7, 2004, Claimant reported left upper and left lower extremity pain and numbness. Claimant reported bad side effects from Neurontin and stopped taking it. The standing flexion test was positive on the right. Dr. Murphy diagnosed arthralgias and numbness and parathesias. She ordered a lumbar MRI and prescribed Darvocet and Voltaren. (Tr. at 202.)

On September 13, 2004, Claimant underwent x-rays and an MRI of his lumbar and cervical spine and an MRI of the thoracic spine, which were largely normal. Claimant's lumbar spine x-rays showed mild dextroscoliosis. The lumbar spine MRI showed probable peripheral schmorl node defect inferior anterior endplate of L1.

(Tr. at 224-33.)

On October 19, 2004, Dr. Murphy noted that Claimant's MRI was normal. Claimant reported the Darvocet did not help. Dr. Murphy surmised that the Claimant had osteoarthritis. Dr. Murphy prescribed Decodron and Ultram. (Tr. at 201.) On December 15, 2004, Claimant reported continued back pain and requested stronger medication. Dr. Murphy noted that "[w]e have already done testing and have c[o]me up with nothing. It must be more of an osteoarthritic type pain." (Tr. at 200.) Claimant's lumbar area had seated flexion test which was positive on the left with increased iliac crest on the left. Claimant was able to heel and toe walk. Deep tendon reflexes were +2/4 bilaterally. Straight leg raising test was essentially negative. Dr. Murphy diagnosed osteoarthritis and arthralgias and prescribed Voltaren and Panlor. (Tr. at 200.) On January 12, 2005, Claimant reported pain in his thoracic and lumbar spine. Claimant had tenderness in the thoracic area and lumbar area. Dr. Murphy diagnosed osteoarthritis and prescribed Lortab and Voltaren. (Tr. at 199.)

On March 15, 2005, Dr. Murphy noted that she had tried everything for Claimant's arthritis. Dr. Murphy planned to increase Claimant's Hydrocodone, and she administered a steroid injection. Claimant had good range of motion in the low back, knees and ankles. (Tr. at 198.) On May 16, 2005, Claimant reported continued pain. Claimant reported that his medication

helps some.  Dr. Murphy indicated she would send Claimant to a specialist.  (Tr. at 197.)

On July 15, 2005, Dr. Murphy completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on which she noted Claimant's diagnoses, including athralgias and osteoarthritis.  She opined that Claimant was unable to engage in full time work for at least one year.  Dr. Murphy felt that Claimant needed a workup for lupus and multiple sclerosis.  (Tr. at 236.)  On September 9, 2005, Claimant continued to have arthralgias and a foot drop.  Dr. Murphy did not observe any toe drop.  Dr. Murphy added Zanaflex and Prednisone.  (Tr. at 196.)

The record includes evidence from Goodwin Chiropractic Center.  Claimant received treatment from July 7, 2004, through August 4, 2004.  (Tr. at 143-57.)

On December 13, 2004, Michael D. Morrello, M.S. examined Claimant at the request of his counsel.  Claimant reported he had been terminated from employment approximately four times for using poor language, poor performance and not showing up for meetings.  Claimant described his overall health as "fairly good."  (Tr. at 159.)  He reported constant back and neck pain.  (Tr. at 159.)  Claimant had good eye contact and was reserved, polite and cooperative.  Claimant's affect was greatly restricted.  His speech was congruent with his affect.  Claimant's attention and concentration were slightly deficient.  Claimant was able to

understand and follow instructions.  On the WAIS-III, Claimant attained a verbal IQ score of 89, a performance IQ score of 94 and a full scale IQ score of 90.  (Tr. at 161.)  On the Minnesota Multiphasic Personality Inventory Test - Revision 2 ("MMPI2"), Claimant answered items in a manner that suggested he was experiencing a mild to moderate level of emotional distress characterized by dysphoria, worrying and anhedonia.  Claimant had concentration and memory problems.  Mr. Morrello diagnosed depressive disorder, not otherwise specified, anxiety disorder, not otherwise specified on Axis I and made no Axis II diagnosis.  He rated Claimant's GAF at 50.  Mr. Morrello recommended counseling. (Tr. at 164.)

On October 12, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to medium work, reduced by an occasional ability to climb and a need to avoid concentrated exposure to hazards.  (Tr. at 165-72.)  These findings were affirmed by a second State agency source on February 14, 2005.  (Tr. at 172.)

On February 26, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 175-88.)

In an undated letter, Thomas Goodwin, DC from Goodwin Chiropractic Center wrote that

> [d]ue to Mr. Hanshaw's progressively worsening chronic
> pain and weakness I have recommended that he limits [sic]

10

> any activity involving bending, twisting, lifting or
> operating machinery.  Jason has multiple complications
> due to lumbar scoliosis including degenerative disc
> disease and Schmorl's node deformity.  Jason's thoracic
> spine suffers from a decrease of normal curvature and
> counter-rotation of thoracic vertebra 5-8.  This rotation
> also involves rib subluxation.  Mr. Hanshaw has been
> involved in motor vehicle and workplace accidents.

(Tr. at 195.)

On December 7, 2005, Colleen Watkins, M.D., a rheumatologist,
examined Claimant at Dr. Murphy's request.  Claimant had full and
painless range of motion of all of his joints, but he was rather
slow in moving his shoulders secondary to pain.  Claimant had full
range of motion in his shoulders.  There was no muscle atrophy in
Claimant's deltoids.  Claimant had no fibromyalgia tender points.
Claimant's lumbosacral spine flexion was limited secondary to pain,
as was lateral flexion.  Dr. Watkins reviewed Claimant's lab tests
from July and noted the rheumatoid factor and ANA were negative,
the sedimentation rate was zero and calcium was 10.3.  She noted
that Claimant could have an abnormal creatinine of 1.9, but that
the test results were blurred.  Dr. Watkins had a difficult time
getting a good history from Claimant, but noted the negative
laboratory and other diagnostic tests of record.  She indicated
that she could not get a good history from Claimant for ankylosing
spondylitis, and, because Claimant also could not do the Schober's
test, she would order low back x-rays and sacroiliac x-rays.  If
these were negative, Dr. Watkins recommended that Claimant see a
back specialist.  (Tr. at 247.)  X-rays were normal.  (Tr. at 248-

11

49.)

Claimant submitted evidence to the Appeals council, including a letter from Dr. Murphy dated May 5, 2006.  Dr. Murphy recounted that she first saw Claimant on December 16, 2003, for complaints of thoracic and lumbar pain, but she did not see him again until July of 2004.  Dr. Murphy noted that when Claimant returned in July, he had muscle spasms in the thoracic area with some rib abnormalities and some lumbar type spasm.  She noted that pain and muscle relaxer medications seemed to help somewhat.  In addition, she noted that an MRI in September of 2004, was normal, except for straightening of the normal thoracic spine.  A work-up for lupus and rheumatoid factor were essentially negative.  Dr. Murphy explained that she believes Claimant suffers from osteoarthritis, particularly in light of his family history.  Dr. Murphy stated that "[o]steoarthritis often presents with no physical findings, maybe some pain with passive motion and some aching discomfort.  Often times it has normal laboratory testing, and especially early in the disease state, x-rays may be normal."  (Tr. at 264.)  Dr. Murphy opined that "given the level of his pain and his gait abnormality, he is unable to work at the present time.  I did state that gross abnormalities were not present, and more often than not, they are never present with patients who suffer from osteoarthritis."  (Tr. at 265.)

On February 28, 2006, Mary Armentrout, BS/ZMHP of Seneca

Health Services, Inc. examined Claimant.  Claimant reported a car accident nine years ago, in which he was severely injured.  (Tr. at 268.)  Ms. Armentrout completed a diagnosis form on which she opined that Claimant's diagnoses included major depression and anxiety disorder.  She rated Claimant's GAF at 45.  (Tr. at 266.)

On May 18, 2006, Mr. Morrello examined Claimant after the ALJ's decision and at the request of counsel.  Claimant had poor eye contact, but rapport seemed to develop to an adequate degree. Claimant was able to recall two out of three words after several minutes and was able to recall the other word after a couple of cues.  Claimant was oriented to all spheres and could interpret parables through concrete reasoning.  Claimant was bothered by suicidal ideation but unsure of whether he could ever get the courage to end his life.  Claimant's affect was greatly restricted. Claimant's speech was congruent with his affect and of average volume and tone.  Claimant's attention and concentration were adequate.  He was able to understand and follow instructions.  On the WAIS-II, Claimant attained a verbal IQ score of 83, a performance IQ score of 100 and a full scale IQ score of 90.  (Tr. at 273.)  These scores placed Claimant in the average to low average range of intellectual functioning.  (Tr. at 274.)

On the MMPI2, Claimant answered items in a manner that suggests the test was invalid.  On the Beck Depression Inventory-Revision Two, Claimant's reported depressive symptoms were measured

within the moderate range.  (Tr. at 275.)  On the Beck Anxiety Inventory, Claimant's anxiety symptoms were measured within the severe range.  Mr. Morrello diagnosed generalized anxiety disorder and major depressive disorder, recurrent, moderate on Axis I, deferred an Axis II diagnosis but noted a possible personality disorder and rated Claimant's GAF at 50.  (Tr. at 275.)  Mr. Morrello noted that Claimant's anxiety and depression symptoms had increased since the last examination.  (Tr. at 276.)  Mr. Morrello recommended continued counseling and referral to a pain clinic. (Tr. at 277.)

Mr. Morrello completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which he rated Claimant's abilities as fair to poor in most categories.  (Tr. at 278-81.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in assessing Claimant's credibility; (2) the ALJ erred in the weight afforded the medical evidence of record; and (3) Claimant meets Listings 12.04, 1.02 and 1.04.  (Pl.'s Br. at 4-8.)

The Commissioner argues that (1) Claimant was not entirely credible; (2) the ALJ complied with the regulations when he weighed the medical evidence of record; (3) Claimant did not meet Listings 12.04, 1.02 or 1.04; and (4) the evidence submitted to the Appeals Council does not provide a basis for changing the ALJ's decision.

14

(Def.'s Br. at 8-14.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In his decision, the ALJ determined that Claimant has medically determinable impairments that could reasonably be expected to produce Claimant's alleged symptoms, but that Claimant's subjective symptoms were not entirely credible. The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 17-18.)

The ALJ ultimately concluded that

the evidence as a whole does not support the severity of the claimant's alleged symptoms and limitations. His December 17, 2003 x-ray of the thoracolumbar spine did show a prior injury and some degenerative change (Exhibit 1F, p. 9). However, after that, Dr. Murphy, his treating physician, repeatedly noted that the claimant's objective testing came back normal (Exhibit 7F, pp. 5 and 7). Clinical findings were basically normal each time the doctor examined him. His treatment was basically conservative. The claimant has minimized ... his activities of daily living, but the record provides no basis for such minimal activity level. Therefore, pursuant to Social Security Ruling 96-6p, I adopt the medium residual functional capacity of the State agency. I also limit the claimant to routine repetitive tasks with only incidental public contact.

15

(Tr. at 19.)

The ALJ's pain and credibility findings are supported by substantial evidence. The ALJ adequately considered the factors identified in the regulations and SSR 96-7p in evaluating Claimant's credibility. As the ALJ explained in his decision, the overwhelming objective evidence of record does not corroborate Claimant's subjective complaints.

Claimant submitted new evidence to the Appeals Council, and because the Appeals Council incorporated that evidence into the administrative record, this court must consider it. <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991). Pursuant to <u>Wilkins</u>, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." <u>Id.</u> Even considering the new evidence submitted by Claimant, the ALJ's pain and credibility analysis is supported by substantial evidence.

Regarding the weight afforded the medical evidence of record, the court proposes that the presiding District Judge find that the ALJ properly weighed the medical evidence of record, and his findings are supported by substantial evidence. In addition, the new evidence offered by Claimant to the Appeals Council does not provide a basis for changing the ALJ's decision.

Claimant takes issue with the ALJ's weighing of medical evidence from Dr. Murphy, Mr. Morrello and Claimant's chiropractor,

Thomas Goodwin.  (Pl.'s Br. at 9-10.)   In his decision, the ALJ considered and summarized all the evidence of record from Dr. Murphy and noted that "every test Dr. Murphy did was negative ...." (Tr. at 18.)  The ALJ rejected Dr. Murphy's opinion on the West Virginia Department of Health and Human Resources, General Physical (Adults) form that Claimant should avoid all work situations because "[t]he objective findings and conservative care as discussed herein do not provide a basis for the opinion that the claimant is incapable of working."  (Tr. at 17.)

The ALJ summarized the evidence from Dr. Watkins, a rheumatologist, including that laboratory results were negative, as were an MRI and x-rays.  (Tr. at 18.)

The ALJ explained that he rejected the opinion of Mr. Goodwin, as he was an "other source" as defined in the regulations at 20 C.F.R. § 404.1513(d) and 416.913(d) (2006).  In addition, the ALJ noted that Mr. Goodwin's opinion regarding Claimant's limitations was not supported by the numerous x-rays and MRIs.  (Tr. at 19.) The ALJ ultimately gave significant weight to the opinion of the State agency source, who opined that Claimant could perform medium work, reduced by nonexertional limitations.  (Tr. at 19.)

As for Mr. Morrello, the ALJ considered the evidence of record from Mr. Morrello and made the following observations and findings regarding Claimant's GAF score of 50:

> In regard to the GAF scale, the Social Security Administration has taken notice that the GAF scale does

not have a direct correlation to the severity requirements in the mental disorder listings (65 FR 5074-5). The GAF is as defined, a "global" scale. It does not correlate to the two components to the GAF, one for symptoms, one for functioning. The instructions to physicians in making GAF assessments state that there may be situations where the individual's symptom severity and level of functioning are discordant. The GAF score in such a case should reflect the worse of the two. An extreme example would be an individual with suicidality who is otherwise functioning well. This individual would be seen as having extreme symptoms and thus deserving a GAF score of 20 though they were functioning well. In the instant case, I am rejecting the GAF of 50 by ... Mr. Mor[r]ello, because in part it is based on the claimant's subjective complaints. Pursuant to Social Security Ruling 96-7p, I find that the claimant's subjective complaints are not credible. The claimant asserted that he is able to perform a minimal amount of activities of daily living but as is discussed more fully below, this is not supported by the objective evidence of record. Such a deception of his ability to perform his physical activities of daily living, does not give much credence to his assertions of his psychological limitations. Also, the treatment record does not support the claimant's subjective complaints.

(Tr. at 16.) The ALJ agreed with Mr. Morrello's findings regarding

Claimant's cognitive functioning, which measured in the lowest

limits of the average range. (Tr. at 16.) In addition, the ALJ

noted that Claimant's

personality profile suggests that he experienced a mild to moderate level of distress characterized by dysphoria, worrying, and anhedonia. He reportedly experienced depressive symptoms that were measured within the mild range. He reportedly experienced anxiety symptoms that were measured within the minimal range. His visual motor functioning was measured within average limits (Exhibit 3F, pp. 6 and 7). I note that these observations by Dr. Mor[r]ello are not suggestive of the incapability of working due to psychological problems.

(Tr. at 16.)

18

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.  Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. See also Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996) (a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence").

Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the

19

more weight will be given to the source's opinion.  Sections
404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the
factors of supportability (the more evidence, especially medical
signs and laboratory findings, in support of an opinion, the more
weight will be given), consistency (the more consistent an opinion
is with the evidence as a whole, the more weight will be given),
and specialization (more weight given to an opinion by a specialist
about issues in his/her area of specialty).

The court proposes that the presiding District Judge find that
the ALJ properly weighed the medical evidence in keeping with the
applicable regulations and case law and, his findings are supported
by substantial evidence.  The ALJ properly weighed the opinion of
Mr. Goodwin, Claimant's chiropractor.  Mr. Goodwin, a chiropractor,
is considered an "other source" rather than an "acceptable source"
under the regulations at 20 C.F.R. §§ 404.1513(d) and 416.913(d)
(2006), and, as such, the Commissioner "may also use evidence from
other sources to show the severity of your impairment(s) and how it
affects your ability to work ...."  Furthermore, as the ALJ found
in his decision, the objective medical evidence of record does not
support the limitations opined by Mr. Goodwin.  As the ALJ noted
throughout his decision, the MRIs and x-ray of record were largely
normal.  In addition, the rheumatologist, Dr. Watkins, noted that
Claimant had a negative sedimentation rate, ANA and rheumatoid
factor, that his MRI did not show any obvious abnormality and that

she generally had difficulty getting a good history from Claimant.

Regarding Mr. Morrello, the ALJ rejected his GAF score of 50 because it was based in part, on Claimant's subjective symptoms, which the ALJ found to be not credible. In addition, the ALJ observed that Mr. Morrello's objective findings, including that Claimant's depression and anxiety symptoms measured in the mild range while his visual motor functioning was within average limits, "are not suggestive of the incapability of working due to psychological problems." (Tr. at 16.) A GAF score of 41-50 indicates "[s]erious symptoms, serious difficulty in social, occupational or school functioning." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994). Mr. Morrello's GAF score is only one part of the evidence related to Claimant's mental condition. Substantial evidence of record, including the objective findings by Mr. Morrello, are consistent with and support the ALJ's determination that while Claimant's depression and anxiety were severe, they resulted only in a need for routine, repetitive tasks and only incidental public contact.

As to Dr. Murphy, the ALJ adequately explained his reasons for rejecting her opinion that Claimant could not work and, those findings are supported by substantial evidence. Dr. Murphy's objective findings were largely benign and, as the ALJ points out, only conservative care was prescribed by Dr. Murphy.

Finally, pursuant to Wilkins, even considering the new

21

evidence submitted to the Appeals Council, the ALJ's decision is supported by substantial evidence. Dr. Murphy' letter, dated after the ALJ's decision, mostly recounts Claimant's treatment history, further supports her diagnosis of osteoarthritis and opines again that Claimant cannot work due to osteoarthritis. Notably, the ALJ found that Claimant had severe osteoarthritis. Dr. Murphy's May 2006, letter offers nothing new in the way of objective findings, which would further support Dr. Murphy's opinion that Claimant is disabled. In short, Dr. Murphy's letter and the other new evidence submitted to the Appeals Council, weighed along with the existing evidence of record, simply do not support a finding of disability.

The evidence of record submitted to the Appeals Council related to Claimant's mental condition, from Mr. Morrello and Ms. Armentrout, also does not provide a basis for changing the ALJ's decision. Ms. Armentrout's four-page report from an assessment on February 28, 2006, shortly before the ALJ's decision in April of 2006, confirms Claimant's diagnoses of anxiety and depression. While Ms. Armentrout rates Claimant's GAF at 45, there is no indication that Claimant is undergoing mental health treatment or is taking psychotropic medication. In Mr. Morrello's letter, dated May 18, 2006, he states that Claimant is receiving mental health counseling and is prescribed Lexapro (an antidepressant), Xanaflex (a muscle relaxant), and Lunesta (a sleep aid). Mr. Morrello does not indicate how long Claimant had been receiving counseling and

22

taking medication, and the record (including the new evidence submitted to the Appeals Council) does not reflect such treatment. While Mr. Morrello indicated that Claimant's condition is worse, he saw Claimant on one occasion on December 13, 2004, and again, after the ALJ's decision, on May 18, 2006. His letter postdates the ALJ's decision and does not provide evidence which would suggest Claimant had more severe mental limitations prior to the ALJ's decision than those limitations already found by the ALJ.

Finally, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant does not meet or equal any of the Listings, including Listings 12.04, 1.02 and 1.04, is supported by substantial evidence. The ALJ determined that Claimant had moderate limitations in social functioning and concentration, persistence and pace. To meet Listing 12.04, Claimant must have a marked limitation in two of the four areas of functioning: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, and pace, and (4) episodes of decompensation each of extended duration. 20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.04 (2006). Claimant does not argue, nor does substantial evidence of record support a finding, that Claimant has a marked limitation in two of the four areas of functioning.

Claimant also does not meet Listings 1.02 or 1.04. Listing 1.02 relates to major dysfunction of a joint. Claimant asserts

23

that he meets Listing 1.02A, which requires chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints with involvement of one major peripheral weight-bearing joint resulting in the inability to ambulate effectively.   20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.02 (2006).   Listing 1.04, related to disorders of the spine, requires degenerative disc disease resulting in compromise of a nerve root with evidence of nerve root compression.   20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.04 (2006).   Claimant does not identify the evidence which would support a finding that he meets either Listing, and substantial evidence of record supports the ALJ's finding that Claimant does not meet or equal either Listing.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this

court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

  October 19, 2007  
        Date

Mary E. Stanley
United States Magistrate Judge